UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KAREN WALKER,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

Case No. 3:14-cv-05457-RBL-KLS

REPORT AND RECOMMENDATION

Noted for April 10, 2015

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On October 28, 2009, plaintiff filed an application for disability insurance benefits, alleging disability as of May 17, 1998. *See* Dkt. 13, Administrative Record ("AR") 26. That application was denied upon initial administrative review on December 12, 2009, and on

REPORT AND RECOMMENDATION - 1

reconsideration on June 3, 2011. *See id.* A hearing was held before an administrative law judge ("ALJ") on March 23, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 635-91.

In a decision dated September 24, 2012, the ALJ determined plaintiff to be not disabled. *See* AR 26-41. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 25, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 6; 20 C.F.R. § 404.981. On June 10, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 1. The administrative record was filed with the Court on August 29, 2014. *See* Dkt. 13. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in failing to obtain medical expert testimony to infer an onset date of disability; (2) in rejecting the opinion of plaintiff's treating physician, Paul D. Brown, M.D., Ph.D.; (3) in discounting plaintiff's credibility; (4) in rejecting the lay witness evidence in the record; (5) in assessing plaintiff's residual functional capacity; and (6) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, however, the undersigned disagrees that the ALJ erred as alleged, and therefore recommends that defendant's decision to deny benefits be affirmed.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*,

REPORT AND RECOMMENDATION - 2

785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.    Inferring Onset Date of Disability

Relying on Social Security Ruling ("SSR") 83-20, 1983 WL 31249, and *Armstrong v.*

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

*Comm'r of Social Security Admin.*, 160 F.3d 587 (9th Cir. 1998), plaintiff argues the ALJ erred in failing to obtain the services of a medical expert to infer an onset date of disability, in light of Dr. Brown's March 22, 2012 opinion that plaintiff "is completely and totally disabled from working at any fulltime position and has been since at least September 12, 2000, the date" A. Holman, M.D., plaintiff's prior treating physician, diagnosed her with fibromyalgia. AR 543. But as pointed out by defendant, SSR 83-20 comes into play only *after* plaintiff has met the "ultimate burden" of proving disability prior to the expiration of her insured status.[2] *Armstrong*, 160 F.3d at 590.  In other words, it is only when plaintiff has established disability *and* the "record is ambiguous as to the onset date of disability," that the ALJ must assist her "in creating a complete record" that "forms a basis for" establishing a disability onset date. *Id.*

In this case, the ALJ found plaintiff to be not disabled. Plaintiff nevertheless asserts SSR 83-20 and case law "apply here by extension or by analogy, if not directly," because "[t]he same principle is involved." Dkt. 20, p. 1. Specifically, plaintiff argues that "given the unchallenged finding of disability" by Dr. Brown "beginning prior to the date last insured and continuing through and beyond the application date, the ALJ was obligated . . . to obtain a medical expert to infer the onset date of disability." Id. at p. 2. A decade after *Armstrong*, however, the Ninth Circuit reiterated its prior holding that SSR 83-20p only applies if the claimant already has been found to be disabled. *See Sam v. Astrue*, 500 F.3d 808, 810-11 (9th Cir. 2008).[3] Accordingly, the undersigned rejects plaintiff's argument.

---

[2] To be entitled to disability insurance benefits, plaintiff "must establish that her disability existed on or before" the date her insured status expired. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998); *see also Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status). Plaintiff's date last insured was March 3, 2003. AR 28. Therefore, to be entitled to disability insurance benefits, plaintiff must establish she was disabled prior to or as of that date. *Tidwell*, 161 F.3d at 601.

[3] In *Sam*, the Court of Appeals stated in relevant part:

REPORT AND RECOMMENDATION - 4

II.     The ALJ's Rejection of Dr. Brown's Opinion

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642.  Further, the Court itself may

---

We reject Sam's contention that SSR 83-20 is applicable to his case. The onset date of disability is defined in the ruling as "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20. Because the ALJ found that Sam was not disabled " *at any time* through the date of [the] decision" (emphasis added), the question of *when* he became disabled did not arise and the procedures prescribed in SSR 83-20 did not apply. *See Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir.2004) ("SSR 83-20 addresses the situation in which an administrative law judge makes a finding that an individual is disabled as of an application date and the question arises as to whether the disability arose at an earlier time.").

Sam's reliance on *DeLorme* as well as *Armstrong v. Commissioner of the Social Security Administration*, 160 F.3d 587 (9th Cir.1998), and *Morgan v. Sullivan*, 945 F.2d 1079 (9th Cir.1991) (per curiam), is misplaced because in those cases there was either an explicit ALJ finding or substantial evidence that the claimant was disabled at some point after the date last insured, thus raising a question of onset date. Here, the ALJ explicitly found that Sam was not disabled at any time. In light of this finding, which is supported by substantial evidence, the ALJ was not required by SSR 83-20 to introduce a medical expert into the process.

*Id.*

REPORT AND RECOMMENDATION - 5

draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

As noted above, on March 22, 2012 Dr. Brown opined that plaintiff was "completely and totally disabled from working at any fulltime position," and had been since at least September

REPORT AND RECOMMENDATION - 6

12, 2000, the date that Dr. Holman diagnosed her with fibromyalgia. AR 543. Specifically, Dr.

Brown stated that he first evaluated plaintiff on February 17, 2005, and that based on his review

of her medical records at that time, he "concluded that pain and fatigue prevented [her] from

maintaining a consistent schedule and greatly interfered with her quality of life." AR 541. Dr.

Brown further stated in relevant part:

> The World Health Organization defines disability as limitation of function that
> compromises an individual's ability to perform an activity within the range
> considered normal. . . .
>
> Ms. Walker fulfills the criteria for disability as presented in [the World Health
> Organization's definition]. She has difficulty in sustaining repetitive motor
> tasks due to both increasing pain and fatigue. She has reduced physical
> efficiency, loss of mental sharpness, fear of poor performance, and difficulty
> conforming to usual working hours. Prolonged sitting or standing and
> workplace stressors such as coldness, excessive noise, and rigid
> time/performance expectations will greatly aggravate her condition. The net
> result of these problems will make Ms. Walker noncompetitive in the work
> force due to erratic performance and frequent absences.

AR 542. The ALJ explained her rejection of Dr. Brown's disability opinion as follows:

> . . . The undersigned rejects this opinion because the Social Security
> Administration does not follow the World Health Organization['s] definition
> of disability. Second, Dr. Brown's opinion is inconsistent with the medical
> evidence of record during the period at issue, which included the opinion by
> her then treating physician that the claimant was doing more than a normal
> fibromyalgia patient and examinations that showed she had only mild tender
> points (5F/9; 8F/34; 17F/8; 18F). Moreover, Dr. Brown did not begin treating
> the claimant until February of 2005, almost 2 years after the claimant's date
> last insured. His opinion can be given no weight.

AR 36-37. The undersigned finds no errors here.

Plaintiff asserts "[t]he ALJ gave no reasons to reject Dr. Brown's opinion that Plaintiff

did become disabled after the date last insured and had been continuously disabled from some

point in the past." Dkt. 14, p. 4. As can be seen above, however, the ALJ gave several specific

reasons for rejecting that opinion. Plaintiff goes on to assert that when a treating physician

REPORT AND RECOMMENDATION - 7

references other disability program standards, the ALJ is required "to comprehend and explain them." *Id.*at 7 (citing *Desrosiers v. Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988); 20 C.F.R. § 404.1512(b)(5)). But 20 C.F.R. § 404.1512(b)(5) merely provides that "[d]ecisions by any governmental or nongovernmental agency about whether [the claimant is] disabled" are treated as evidence to be considered.

In *Desrosiers*, the Ninth Circuit held the ALJ erred in finding two examining physicians contradicted the claimant's claim of inability to perform all substantial gainful activity, given that they had evaluated the claimant for his state workers' compensation claim, which did not require them to determine the actual level of work he was capable of performing as required by the Social Security Act. *See* 846 F.2d at 576. That finding was improper because it was "clear from the record that the ALJ did not adequately consider this distinction." *Id.* Here, though, the ALJ specifically pointed out that the Social Security Administration does not follow the World Health Organization's definition of disability. It is true that the ALJ did not explain exactly how the two definitions differ, but this reasonably can be inferred from the ALJ's reference to the former at the beginning of her decision (*see* AR 26 (noting "[d]isability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months"); 42 U.S.C. § 423(d)(1)(A)), and to the description of the latter Dr. Brown provided in his evaluation report as noted above (*see* AR 542 (defining it as "as limitation of function that compromises an individual's ability to perform an activity within the range considered normal"). *See Magallanes*, 881 at 755 (court may draw specific and legitimate inferences from ALJ's opinion).

As noted by the ALJ, furthermore, while Dr. Brown opined that plaintiff was disabled as

REPORT AND RECOMMENDATION - 8

of the date Dr. Holman diagnosed her with fibromyalgia, Dr. Holman's clinical findings showed

at most minimal to mild tender points. *See* AR 555-58; *Batson*, 359 F.3d at 1195 (ALJ need not

accept opinion of treating physician if inadequately supported by clinical findings or by record as

whole). Plaintiff asserts Dr. Brown provided his own clinical findings to support his disability

opinion as well, but Dr. Brown discussed those findings only in terms of the present and future

tense, and thus there is no indication he intended to opine that those findings were present prior

to plaintiff's date last insured.[4] *See* AR 542. Even if Dr. Brown did have such an intent, though,

as just discussed the ALJ properly relied on the contradictory findings of Dr. Holman, plaintiff's

treating physician during the relevant time period, to reject Dr. Brown's opinion. *See Macri v.

Chater*, 93 F.3d 540, 545 (9th Cir. 1996) (opinion of psychiatrist who examines claimant after

expiration of his or her disability insured status is entitled to less weight than that of psychiatrist

who completed contemporaneous examination).

Plaintiff argues Dr. Holman found she had 18/18 tender points in mid-September 2000,

as well as tight trapezius and rhomboid muscles and a tight low back with moderate

hypermobility. *See* Dkt. 14, p. 8 (citing AR 331); *Rollins v. Massanari*, 261 F.3d 853, 855 (9th

Cir. 2001) (noting that fibromyalgia is characterized by 18 fixed tender spots found at "fixed

locations on the body," which "when pressed firmly cause the patient to flinch," with "the rule of

thumb" being "that the patient must have at least 11" of those spots to be diagnosed with that

condition) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). But as plaintiff

acknowledges, Dr. Holman's subsequent findings in 2001, 2002 and 2003, consisted of none to

---

[4] Medical evaluation reports "containing observations made after the period for disability are relevant to assess the claimant's disability" during that period. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988); *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975). "[C]laimants who apply for benefits for a current disability after the expiration of their insured status" will be entitled to them, however, only if they can "prove that the current disability has existed continuously since a date on or before the date that their insurance coverage lapsed." *Flaten*, 44 F.3d at 1462.

REPORT AND RECOMMENDATION - 9

1    merely minimal or mild tender points. *See* AR 555-58; *Osenbrock v. Apfel*, 240 F.3d 1157, 1165

2    (9th Cir. 2001) ("A treating physician's most recent medical reports are highly probative.").

3            While Dr. Holman may have found hypermobility and tight trapezius muscles again in

4    April 2003, furthermore, such symptoms alone do not indicate the presence of significant work-

5    related functional limitations, nor does the fact that plaintiff also may have been diagnosed with

6    certain other or related impairments, such as sleep dysregulation/disturbance and *suspected*

7    cervical myelopathy, or been prescribed medications therefor. *See* AR 555; *Matthews v. Shalala*,

8    10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a

9    disability"); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (noting "[t]he mere diagnosis of

10   [an impairment] . . . says nothing about the severity of the [diagnosed] condition," and upholding

11   ALJ's determination of non-severity where doctors reports were silent as to any limitations that

12   may stem from that impairment).

13

14           Lastly, while it is true that Dr. Brown, as a medical professional, is more qualified than

15   the ALJ to comment on the medical implications of clinical findings, and may not substitute her

16   own lay opinion for that of a physician,[5] this is not what the ALJ did here. Rather the ALJ chose

17   between the medical evidence provided by two different physicians. This is permissible and well

18   within the purview of the ALJ. *See Gober*, 574 F.2d at 777 (ALJ free to choose "between

19   properly submitted medical opinions"); *see also Morgan*, 169 F.3d at 603 (determination as to

20   whether inconsistencies in medical evidence are material or certain factors  relevant to discount

21   medical source opinions falls within ALJ's responsibility); *Reddick*, 157 F.3d at 722 (ALJ is

22   responsible for determining credibility and resolving ambiguities and conflicts in medical

23

24

25   ───────────────

26   [5] *See Gonzalez Perez v. Secretary of Health and Human Services*, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not
     substitute own opinion for findings and opinion of physician); *McBrayer v. Secretary of Health and Human
     Services*, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical
     opinion); *Gober v. Mathews*, 574 F.2d 772, 777 (3rd Cir. 1978) (ALJ not free to set own expertise against that of
     physician who testified before him).

REPORT AND RECOMMENDATION - 10

evidence); *Sample*, 694 F.2d at 642 (resolving questions of credibility and conflicts in medical evidence is solely function of ALJ).

III.   The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. *See Sample*, 694 F.2d at 642 The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan* , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted. The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *See id.*

REPORT AND RECOMMENDATION - 11

The ALJ in this case discounted plaintiff's credibility in part because her subjective complaints are inconsistent with the objective medical evidence in the record. *See* AR 33-35. This was proper. *See Regennitter v. Commissioner of Social Security Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). Plaintiff argues a December 2012 MRI showing disc herniation impinging the thecal sac, and her own testimony and self-reporting regarding inability to support her own weight due to pain and weakness and difficulty with balance, supports her claims of disabling limitations. *See* Dkt. 14, p. 10 (citing AR 416, 418, 649). But the MRI findings themselves hardly establish that plaintiff necessarily suffers from such limitations. The MRI, furthermore, is dated years after plaintiff's date last insured. As for plaintiff's own testimony and self-reporting, the ALJ gave sufficient reasons for discounting her credibility as discussed herein, and therefore was under no obligation to believe them.

The ALJ also noted that in September 1999, Mary Reif, M.D., a neurologist, commented that even though plaintiff "complained of fatigue and muscle aches, she did a lot more than a typical fibromyalgia patient, namely, [she] had been trimming trees at her child's school" AR 33. Plaintiff does not challenge this reason for finding her less than fully credible. She does argue the ALJ erred in discounting her credibility on the basis that despite claiming her symptoms cause her legs to give out and her arms to drop things, she participated in activities indicating a greater level of functioning such as blowing glass, "which requires full functioning of both her arms and her legs." AR 35-36. While it may be that the record is not exactly clear as to how long plaintiff did this – and thus as to whether she spent a substantial part of her day performing an activity that is transferrable to a work setting (*see Smolen*, 80 F.3d at 1284) – a claimant's activities can be relied on by the ALJ to discount credibility if they contradict the claimant's "other testimony" in general as well (*see Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)). The undersigned finds

it was not unreasonable for the ALJ to surmise that an individual having problems holding onto things and/or keeping his or her legs from giving out such that all work is precluded, would not be able to engage in blowing glass as an activity.

The ALJ further discounted plaintiff's credibility because of her "refusal to comply with Dr. Reif['s] treatment recommendations," suggesting "her symptoms may not have been as serious as she alleged." AR 35. This too was a valid basis for finding plaintiff to be less than fully credible, which also has not been challenged. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert a good reason for not following prescribed course of treatment "can cast doubt on the sincerity of the claimant's pain testimony"). Plaintiff also does not challenge the following reason the ALJ gave for discounting her credibility:

> The claimant's description of her symptoms are so extreme that they are just not believable. For example, regarding her sleep problems, the claimant testified that she goes seven to ten days without sleep. This is not believable because this degree of sleep deprivation is not reflected anywhere in the record. One would expect hallucinations or complete collapse from exhaustion and the record just does not reflect this.

AR 35; *see Tonapetyan*, 242 F.3d at 1148 (ALJ properly discredited claimant's testimony in part based on "her tendency to exaggerate").

Lastly, plaintiff argues the ALJ erred in discounting her credibility on the basis that while she testified she has experienced problems with her arms and legs since an automobile accident in 1981, the record instead shows she was in an automobile accident in 2002 or 2003. *See* AR 35. The undersigned agrees with plaintiff that this discrepancy alone does not specifically contradict her allegation that she experiences weakness and pain due to her back impairment and problems with balance and falling. It does, however, call into question her veracity in general – in that the record directly contradicts her testimony as to when her symptoms began – and thus the ALJ was not remiss on relying on the discrepancy to find her less than credible overall.

REPORT AND RECOMMENDATION - 13

IV.   <u>The ALJ's Evaluation of the Lay Witness Evidence in the Record</u>

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

The record contains a lay witness statement from one of plaintiff's former co-workers, Lauri Pruett, who stated that when she and plaintiff worked together, she noticed plaintiff "had some odd positions that she worked in," and that plaintiff told her "she needed to do so [so] as to stabilize herself to be safe." AR 168. The ALJ rejected Ms. Pruett's lay witness statement because she believed plaintiff had mercury toxicity whereas the objective medical evidence showed she did not have that condition, and because Ms. Pruett was "heavily vested in the claim of mercury toxicity of the dental profession based on her activism in this area." AR 38. The undersigned agrees with plaintiff that these are not germane reasons for rejecting this lay witness evidence, since the fact that Ms. Pruett may be invested in the issue of mercury poisoning does not in itself necessarily call into question the reliability of what Ms. Pruett stated she actually noticed while working with plaintiff.

That being said, the undersigned finds this error to be harmless in light of the fact that as discussed above, the ALJ gave sufficient reasons for discounting plaintiff's credibility, and those reasons "apply equally well" to Ms. Pruett's lay witness statement, which did not describe any

REPORT AND RECOMMENDATION - 14

limitations not already largely described by plaintiff. *Molina v. Astrue*, 674 F.3d 1104, 1116-17 (9th Cir. 2012) ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se."); *see also Stout v. Comm'r, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision"). Accordingly, the undersigned declines to find any reversible error here.

V.      The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four of the disability evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all

REPORT AND RECOMMENDATION - 15

of the relevant evidence in the record. *See id.* However, an inability to work must result from the

claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those

limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing

a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related

functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

medical or other evidence." *Id.* at *7.

   The ALJ found plaintiff had the residual functional capacity:

> **. . . to perform light work . . . except she should never climb ladders,**
> **ropes or scaffolds. [She] can occasionally climb ramps and stairs. She can**
> **occasional[ly] stoop, kneel, crouch, and crawl. [She] can frequently but**
> **not constantly handle and finger. She should avoid concentrated exposure**
> **to hazards, vibrations, and pulmonary irritants.**

AR 32 (emphasis in original). Plaintiff argues that given the ALJ's harmful errors alleged above,

the RFC with which the ALJ assessed her is incomplete. But because as discussed above the ALJ

did not commit any harmful error, here too the ALJ did not err.

VI.   The ALJ's Step Four Determination

   At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual

functional capacity. *See* AR 677-78. In response to that question, the vocational expert testified

that an individual with those limitations – and with the same age, education and work experience

as plaintiff – would be able to perform her past relevant work. *See* AR 678-79. Based on the

testimony of the vocational expert, the ALJ found plaintiff would be capable of performing that

work. *See* AR 39-41. Again, plaintiff argues that in light of the ALJ's harmful errors alleged

above, the hypothetical question the ALJ posed cannot be said to be completely accurate. *See*

*Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (claimant has burden at step four of

sequential disability evaluation process to show he or she is unable to return to his or her past relevant work). For the same reasons discussed above, however, the ALJ did not commit any such errors, and therefore there is no harmful error here as well.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ properly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court affirm defendant's decision to deny benefits.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 10, 2015**, as noted in the caption.

DATED this 26th day of March, 2015.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17